1 | EDMUND G. BROWN JR.
Attorney General of the State of California
2 | DANE R. GILLETTE
Chief Assistant Attorney General
3 | GARY W. SCHONS
Senior Assistant Attorney General
4 | RHONDA CARTWRIGHT-LADENDORF
Supervising Deputy Attorney General
5 | STACY TYLER, State Bar No. 216355
Deputy Attorney General
6 | 110 West A Street, Suite 1100
San Diego, CA 92101
7 | P.O. Box 85266
San Diego, CA 92186-5266
8 | Telephone: (619) 645-2446
Fax: (619) 645-2581
9 | Email: Stacy.Tyler@doj.ca.gov

10 | Attorneys for Respondent

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STUART S. PRESSLY,<br><br>                                    Petitioner,<br><br>          v.<br><br>F.B. HAWS, Warden,<br><br>                                    Respondent. | 07cv2315 J (JMA)<br><br>**ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge:  The Honorable Jan M. Adler |

## INTRODUCTION

**RESPONDENT,** Brian Haws, Warden of California State Prison, Los Angeles County, at Lancaster, California, by and through his counsel Edmund Brown, Attorney General of the State of California, and Stacy Tyler, Deputy Attorney General, submits this Answer to the Petition for Writ of Habeas Corpus pending before this Court in the above-entitled matter.  Respondent submits the Answer pursuant to this Court's Orders of December 18, 2007, and April 22, 2008.  Respondent denies and affirmatively alleges as follows:

///

## I.

Petitioner STUART PRESSLY ("Petitioner") is in the lawful custody of Warden Haws pursuant to a valid judgment of convictions for robbery and for being a felon in possession of a weapon, and to findings that Petitioner had multiple prior convictions for serious and violent felonies.

## II.

Petitioner is serving a lawful state prison term of sixty years to life pursuant to the valid judgment of the San Diego County Superior Court entered on May 23, 2005.

## III.

The highly deferential standard of federal habeas corpus review established by the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254(d), applies to Petitioner's claims.

## IV.

In Ground One, Petitioner asserts certain evidence should have been excluded from his trial because it was obtained in violation of right under the Fourth Amendment to the United States Constitution to be free from unreasonable searches and seizures. The State provided, and Petitioner availed himself of, procedures to litigate this claim fully in state court. Accordingly, the claim is not cognizable in federal habeas proceedings, and this Court must reject it.

## V.

In Ground Two, Petitioner asserts the evidence adduced at trial was insufficient to support the judgment because it did not establish fear, a requisite element of the crime of robbery under California law. The state courts considered and rejected this claim. Their decision was neither contrary to, nor an unreasonable application of the controlling United States Supreme Court law on the matter, nor was it based on unreasonable interpretation of the facts. Accordingly, this Court must defer to that decision and reject Ground Two.

///
///
///

**VI.**

The state courts made express and implied factual findings. Under 28 U.S.C. § 2254(e)(1), this Court must presume those findings to be correct unless Petitioner affirmatively demonstrates otherwise. Petitioner has failed to do so. Therefore, this Court must presume the rectitude of the state courts' factual findings.

**VIII.**

The claims Petitioner raises in the instant Petition for Writ of Habeas Corpus are essentially the same as those he presented in his Petition for Review to the California Supreme Court; therefore, the claims are exhausted.

**IX.**

The Petition is timely under 28 U.S.C. § 2244(d)(1) and (2).

**X.**

Respondent has copies of the relevant state court pleadings, as well as the clerk's transcript and reporter's transcript of the trial. Respondent will lodge those documents with this Court contemporaneously with this Answer.

**XI.**

The relevant facts and procedural history set forth in the accompanying Memorandum of Points and Authorities are incorporated by reference herein. Except as expressly admitted herein or in the Memorandum of Points and Authorities, Respondent denies each and every allegation of the Petition and specifically denies that Petitioner's confinement is in any way improper, that any condition of Petitioner's confinement is illegal, or that any of his constitutional rights have been or are being violated in any way.

///
///
///
///
///
///

1       **WHEREFORE**, for the reasons set forth in this Answer, the Memorandum of Points and

2   Authorities filed in support of this Answer and incorporated by reference, this Court should deny the

3   Petition with prejudice, deny all other relief, and deny any request for a Certificate of Appealability.

4       Dated:  May 5, 2008

5                   Respectfully submitted,

6                   EDMUND G. BROWN JR.
                Attorney General of the State of California

7                   DANE R. GILLETTE
                Chief Assistant Attorney General

8

9                   GARY W. SCHONS
                Senior Assistant Attorney General

10                  RHONDA CARTWRIGHT-LADENDORF
                Supervising Deputy Attorney General

11

12                  <u>s/Stacy Tyler</u>

13                  STACY TYLER
                Deputy Attorney General

14                  Attorneys for Respondent
                E-mail:  Stacy.Tyler@doj.ca.gov

15

16  ST:mgs
    80234524.wpd

17  SD2007803271

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES ........................... 5

INTRODUCTION ................................................................................ 5

PROCEDURE ..................................................................................... 5

FACTS ................................................................................................ 6

STANDARD OF REVIEW .................................................................. 9

ARGUMENT ....................................................................................... 11

    I.     GROUND ONE OF THE PETITION PROVIDES NO BASIS FOR ISSUING THE EXTRAORDINARY WRIT OF HABEAS CORPUS BECAUSE IT PRESENTS A CLAIM NOT COGNIZABLE IN FEDERAL HABEAS PROCEEDINGS ............. 11

        A.   This Court Should Reject Ground One Because It Presents No Cognizable Claim ......................................................... 11

    II.    GROUND TWO OF THE PETITION PROVIDES NO BASIS FOR ISSUING THE EXTRAORDINARY WRIT OF HABEAS CORPUS BECAUSE THE STATE COURTS REJECTED THE CLAIM AND THEIR DECISION WAS BASED UPON A REASONABLE APPLICATION OF CONTROLLING UNITED STATES SUPREME COURT LAW ................................................ 12

CONCLUSION .................................................................................... 16

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Arredondo v. Ortiz*
365 F.3d 778 (9th Cir. 2004) ............................................. 10

*Bell v. Cone*
535 U.S. 685
122 S. Ct. 1843
152 L. Ed. 2d 914 (2002) ............................................. 10

*Brecht v. Abrahamson*
507 U.S. 619
113 S. Ct. 1710
123 L. Ed. 2d 353 (1993) ............................................. 10

*Campbell v. Rice*
408 F.3d 1166 (9th Cir. 2005) ............................................. 9

*Chein v. Shumsky*
373 F.3d 978 (9th Cir. 2004) ............................................. 13

*Clark v. Murphy*
331 F.3d 1062 (9th Cir. 2003) ............................................. 11

*Davis v. Woodford*
333 F.3d 982 (9th Cir. 2003) ............................................. 13

*Davis v. Woodford*
384 F.3d 628 (9th Cir. 2004) ............................................. 13

*Duhaime v. Ducharme*
200 F.3d 597 (9th Cir. 1999) ............................................. 10-12

*Haupt v. Dillard*
17 F.3d 285 (9th Cir. 1994) ............................................. 12

*Herrera v. Collins*
506 U.S. 390
113 S. Ct. 853
122 L. Ed. 2d 203 (1993) ............................................. 13

*Jackson v. Virginia*
443 U.S. 307
99 S. Ct. 2781
61 L. Ed. 2d 560 (1979) ............................................. 13, 15

*Juan H. v. Allen*
408 F.3d 1262 (9th Cir. 2005) ............................................. 13

*Lambert v. Blodgett*
393 F.3d 943 (9th Cir. 2004) ............................................. 10, 12

## TABLE OF AUTHORITIES  (continued)

Page

*Lindh v. Murphy*
521 U.S. 320
117 S. Ct. 2059
138 L. Ed. 2d 481 (1997) .......................................... 9, 10

*Moormann v. Schriro*
426 F.3d 1044 (9th Cir. 2005) .................................... 12

*Ortiz-Sandoval v. Gomez*
81 F.3d 891 (9th Cir. 1996) ...................................... 11

*Payne v. Borg*
982 F.2d 335 (9th Cir. 1992) ..................................... 13

*People v. Brew*
2 Cal. App. 4th 99
2 Cal. Rptr. 2d 851 (1991) ....................................... 13

*People v. Cooper*
53 Cal. 3d 1158
811 P.2d 742
282 Cal. Rptr. 450 (1991) ........................................ 14

*People v. Cuevas*
89 Cal. App. 4th 689
107 Cal. Rptr. 2d 529 (2001) ..................................... 13

*People v. Davison*
32 Cal. App. 4th 206
38 Cal. Rptr. 2d 438 (1995) ...................................... 13, 14

*People v. Escobar*
3 Cal. 4th 740
837 P.2d 1100
12 Cal. Rptr. 2d 586 (1992) ...................................... 14

*People v. Hill*
17 Cal. 4th 800
952 P.2d 673
72 Cal. Rptr. 2d 656 (1998) ...................................... 14

*People v. Johnson*
26 Cal. 3d 557
606 P.2d 738
162 Cal. Rptr. 431 (1980) ........................................ 14, 15

*People v. Mungia*
234 Cal. App. 3d 1703
286 Cal. Rptr. 394 (1991) ........................................ 13

*People v. Ramos*
106 Cal. App. 3d 591
165 Cal. Rptr. 179 (1980) ........................................ 13, 14

**TABLE OF AUTHORITIES  (continued)**

Page

*People v. Renteria*
61 Cal. 2d 497
393 P.2d 413
39 Cal. Rptr. 213 (1964)                              13, 14

*People v. Scott*
9 Cal. 4th 331
885 P.2d 1040
36 Cal. Rptr. 2d 627 (1994)                           13, 14

*People v. Wright*
52 Cal. App. 4th 203
59 Cal. Rptr. 2d 316 (1996)                           13

*Price v. Vincent*
538 U.S. 634
123 S. Ct. 1848
155 L. Ed. 2d 877 (2003)                              11

*Schlup v. Delo*
513 U.S. 298
115 S. Ct. 851
130 L. Ed. 2d 808 (1995)                              12

*Shackleford v. Hubbard*
234 F.3d 1072 (9th Cir. 2000)                         10

*Shumate v. Newland,*
75 F. Supp. 2d 1076 (N.D. Cal. 1999)                  13

*Stone v. Powell*
428 U.S. 465
96 S. Ct. 3037
49 L. Ed. 2d 1067 (1976)                              11

*Taylor v. Maddox*
366 F.3d 992 (9th Cir. 2004)                          10, 12

*Vansickel v. White*
166 F.3d 953 (9th Cir. 1999)                          10

*Williams v. Taylor*
529 U.S. 362
120 S. Ct. 1495
146 L. Ed. 2d 389 (2000)                              10

*Woodford v. Visciotti*
537 U.S. 19
123 S. Ct. 357
154 L .Ed. 2d 279 (2002)                              10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES  (continued)**

                                                                                    **Page**

1

2   *Ylst v. Nunnemaker*
    501 U.S. 797
3   111 S. Ct. 2590
    115 L. Ed. 2d 706 (1991)                                                          10
4

5   **Constitutional Provisions**

6   United States Constitution
            Fourth Amendment                                                     11, 12, 16
7

8   **Statutes**

9   28 United States Code
            § 2254                                                                     9
10          § 2254(d)                                                             10, 12
            § 2254 (e)(1)                                                         10, 12
11
    Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")
12  Pub. L. No. 104-132, 110 Stat. 1214 (1996)                                     9, 10

13  California Penal Code
            § 211                                                                  5, 13
14          § 667, subd. (b)-(i)                                                       5
            § 667.5,  subd. (a)                                                        5
15          § 668                                                                      5
            § 1170.12                                                                  5
16          § 12021, subd. (a)(1)                                                      5
            § 1538.5                                                                  11
17          § 1538.5 (a)-(i)                                                          12

18

19

20

21

22

23

24

25

26

27

28

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Petitioner CURTIS PRESSLY ("Petitioner"), is incarcerated in state prison because a jury found him guilty of robbery and a court found him guilty of being a felon in possession of a firearm, and because the court also found he had numerous prior convictions for serious and violent felonies. Petitioner asserts his incarceration is unlawful because the search of his motel room violated search and seizure law and because the evidence adduced at trial was insufficient to support the judgment. The State's courts have considered and rejected these claims. This Court should deny the Petition because the Petitioner's claims are variously not cognizable in federal habeas proceedings and were rejected by a state court whose judgment was reasonable and consistent with controlling federal law.

## PROCEDURE

On April 25, 2005, a San Diego County jury convicted Petitioner of robbery (Cal. Penal Code § 211), and the court found him guilty of possession of a firearm by a felon (Cal. Penal Code § 12021, subd. (a)(1)), Petitioner having requested a bench trial on the latter count. (Lodged Doc. No. 1 at 234, 238, 240.) The court also found true several allegations respecting six prior convictions for serious and violent felonies, which subjected Petitioner to mandatory increased prison terms under California's recidivist offender sentencing laws (Cal. Penal Code §§ 667, subd. (b)-(i), 667.5, subd. (a), 668, 1170.12). (Lodged Doc. No. 1 at 67-69, 238, 240.)

On May 23, 2005, the court sentenced Petitioner to sixty years to life in state prison: twenty-five years to life for the robbery, a consecutive twenty-five years to life for the firearm possession, and a consecutive ten years (five years each) for two of the serious felony prior convictions. (Lodged Doc. No. 1 at 216, 241.) The court stayed the sentences on the remaining allegations. (Lodged Doc. No. 1 at 216, 241.)

Petitioner appealed the judgment to California's intermediate appellate court. (Lodged Doc. No. 4.) He raised the same claims on appeal that he raises in the instant Petition. (Lodged Doc. No. 4 at i, 12-23.) The court issued a reasoned opinion affirming the judgment on September 28, 2006. (Lodged Doc. No. 7.)

1    Petitioner then petitioned the State's high court for review, raising the same issues he

2    presented on direct appeal. (Lodged Doc. No. 8.) The California Supreme Court denied review on

3    December 13, 2006. (Lodged Doc. No. 9.)

4    Petitioner filed the instant Petition for Writ of Habeas Corpus ("the Petition") on

5    December 10, 2007.

6                                                    **FACTS**

7    Cristina Zizzo worked as a bank teller at the Union Bank on 344 Laurel Street at the corner

8    of Fourth Avenue in the Banker's Hill neighborhood of San Diego. (Lodged Doc. No. 3 at 148-149.)

9    She was working at the counter as usual on the morning of October 1, 2003, when a man in a white

10   Chicago Bulls cap with a blue brim and a nylon jacket with a logo on the left breast approached the

11   counter. (Lodged Doc. No. 3 at 151, 161-164.) Ms. Zizzo had noticed the man a bit earlier when

12   he was writing on a piece of paper at a nearby table, but she had not thought anything of it because

13   she assumed he was filling out a deposit or withdrawal slip. (Lodged Doc. No. 3 at 162.) Therefore,

14   when the man approached the counter and pushed the piece of paper across to her as customers

15   usually do, Ms. Zizzo thought it was for an ordinary transaction. (Lodged Doc. No. 3 at 152, 162-

16   163.) When she looked at the piece of paper, however, she saw it was not a normal transaction; it

17   was a demand letter that read something like, "This is a robbery. No alarm, no bait, no dye packs."

18   (Lodged Doc. No. 3 at 152.)

19   Ms. Zizzo was "a little bit[]" afraid. (Lodged Doc. No. 3 at 153.) She responded as she

20   had been trained to do, which was to not resist and to comply with the robber's demands. (Lodged

21   Doc. No. 3 at 149, 156.) She began removing the money from her two drawers to give it to the

22   robber. (Lodged Doc. No. 3 at 149.) She had unloaded all but one stack of twenty dollar bills from

23   the top drawer and was preparing to empty the next drawer when the robber pointed to the remaining

24   stack of bills and told her, "Give me those 20's." (Lodged Doc. No. 3 at 155, 157.) Ms. Zizzo had

25   not initially included that stack because the demand note had instructed her not to give the robber

26   a dye pack, and that stack contained a dye pack, a small electronically triggered explosive device

27   concealed within the stack of bills that would detonate and release red dye and smoke upon exit from

28   the building. (Lodged Doc. No. 3 at 149-150, 154-155.) But now that the robber, apparently

Answer; Memorandum of Points and Authorities                                    Case No. 07cv2315 J (JMA)

1  unaware of the dye pack's presence, specifically demanded the stack with the dye pack, Ms. Zizzo

2  gave it to him. (Lodged Doc. No. 3 at 154-155.)  After Ms. Zizzo had handed over all the money

3  in her two drawers, the robber told her, "You never saw me." (Lodged Doc. No. 3 at 157-159.)  Then

4  he left the building and headed west on Laurel Street. (Lodged Doc. No. 3 at 157-159.)  Ms. Zizzo

5  waited until the robber had left the building to activate the silent alarm under her counter station to

6  alert the police to the robbery. (Lodged Doc. No. 3 at 159.)

7  　　　　Jennifer Tarver was driving her car northbound up Second Avenue in the Banker's Hill

8  area around the time the robber left Union Bank. (Lodged Doc. No. 3 at 177-178.)  As she reached

9  the stop sign at the intersection of Second Avenue and Laurel Street, Ms. Tarver saw a Toyota

10  Corolla coming from the direction of Union Bank with smoke billowing from the cabin. (Lodged

11  Doc. No. 3 at 179-180.)  Initially, she thought the car was on fire, but as she watched, she noticed

12  the smoke was coming from the car's cabin and that it was orange. (Lodged Doc. No. 3 at 179-181.)

13  Ms. Tarver had worked as a bank teller in the past, and she recognized the colored smoke as that

14  from a bank dye pack, which she "strongly associated [with] the possibility of a bank robbery."

15  (Lodged Doc. No. 3 at 183-184.)  Accordingly, as the driver pulled into a nearby parking lot, Ms.

16  Tarver followed him, parked at a distance, and watched him. (Lodged Doc. No. 3 at 181-183, 193-

17  194.)

18  　　　　Filisimo Amposta was sitting in his car in the parking lot when the driver of the red Toyota

19  Corolla pulled up next to him and parked. (Lodged Doc. No. 3 at 194-195.)  Mr. Amposta saw red

20  smoke coming out of the car, and he saw the driver get out and try to wave the smoke out of the

21  cabin. (Lodged Doc. No. 3 at 195.)  Mr. Amposta was less than five feet from the driver, and as he

22  stared at the man, the man looked up at him and their eyes met. (Lodged Doc. No. 3 at 195.)  Then

23  the man got back in the car and left the parking lot, continuing westbound on Laurel Street. (Lodged

24  Doc. No. 3 at 182, 195.)

25  　　　　Ms. Tarver had continued to observe the driver while he was in the parking lot, and had

26  called 9-1-1 on her mobile telephone in the meantime. (Lodged Doc. No. 3 at 181-182.)  As soon

27  as the Toyota exited the parking lot, she began following it again, and relayed the Toyota's progress

28  to an emergency dispatcher while she drove. (Lodged Doc. No. 3 at 182, 184-185.)  The Toyota

1   turned right onto Nutmeg Street and continued to Fourth Avenue. (Lodged Doc. No. 3 at 182.)  At

2   some point, the driver apparently realized he was being followed because he accelerated and ran the

3   stop sign at Fifth Avenue. (Lodged Doc. No. 3 at 182.)  Ms. Tarver did not follow the driver through

4   these maneuvers, but instead returned to the Union Bank near the intersection where she had first

5   seen the smoking car. (Lodged Doc. No. 3 at 182-183.)

6           The police had responded to the bank by then, and there were officers outside the bank.

7   (Lodged Doc. No. 3 at 186-188.)  Ms. Tarver approached one of them and told him what she had

8   witnessed. (Lodged Doc. No. 3 at 186-187.)  The officer took her in his squad car to re-trace the

9   route the robber had taken and to try to find the robber's car. (Lodged Doc. No. 3 at 188.)  About

10  fifteen minutes later, the officer got a mobile telephone or radio call instructing him to report to the

11  Days Inn Motel at 1919 Pacific Highway because a car like the robber's had been seen parked near

12  the motel. (Lodged Doc. No. 3 at 190.)  The officer drove directly to the motel with Ms. Tarver.

13  (Lodged Doc. No. 3 at 190-191.)

14          By the time Ms. Tarver and the officer were en route to the Days Inn Motel, Detective

15  James McGhee of the Robbery Division was already there. (Lodged Doc. No. 3 at 209-210.)  He had

16  responded to a police radio broadcast that the bank robbery suspect was believed to be at the motel,

17  and that a vehicle matching the robber's in make and license plate number had been found nearby.

18  (Lodged Doc. No. 3 at 210, 219-221, 225-226.)  The doors of the Days Inn Motel opened directly

19  onto open-air walkways, which were visible from the parking lot, and as Detective McGhee pulled

20  into the parking lot, he saw a man on the third-floor walkway heading toward the elevator. (Lodged

21  Doc. No. 3 at 210-212.)  The man appeared to be walking away from room 315, the door to which

22  stood open. (Lodged Doc. No. 3 at 212-213.)  Leaning over the walkway railing in front of the room

23  was a woman. (Lodged Doc. No. 3 at 213-214.)  Detective McGhee saw the man get into the

24  elevator and go down to the first floor, where other officers, who had been waiting there,

25  immediately detained him. (Lodged Doc. No. 3 at 214, 239-240.)

26          Seeing that the officers had the man in hand, Detective McGhee went upstairs to talk to

27  the woman. (Lodged Doc. No. 3 at 214-215.)  He asked her for her identification, and she went into

28  the room to get it, leaving the door open. (Lodged Doc. No. 3 at 215.)  Detective McGhee followed

1    her in. (Lodged Doc. No. 3 at 215.) Near the door in plain view was a red-stained cardboard beer

2    carton filled with cash. (Lodged Doc. No. 3 at 215.) Detective McGhee recognized the stain as the

3    type caused by bank dye packs. (Lodged Doc. No. 3 at 216.) He escorted the woman back out of

4    the room and waited for the lead detective to arrive. (Lodged Doc. No. 3 at 217.)

5       Detective Robert Sylvester was the lead detective. (Lodged Doc. No. 3 at 217.) He

6    arrived at the Days Inn Motel shortly after Detective McGhee made contact with the woman in room

7    315. (Lodged Doc. No. 3 at 226.) When he got there, he saw Petitioner being detained by officers

8    on the ground floor. (Lodged Doc. No. 3 at 226.) Petitioner's hair and body were wet, as though

9    he had just taken a shower. (Lodged Doc. No. 3 at 227, 240.) There were red stains on his hands

10    and fingernails. (Lodged Doc. No. 3 at 227-228, 240.)

11       Detective Sylvester and other law enforcement officers searched room 315. (Lodged Doc.

12    No. 3 at 229, 241.) The shower appeared to have been recently used, and there were red dye marks

13    on the shower head and red-stained clothing, including a jacket and a Chicago Bulls cap, in the tub.

14    (Lodged Doc. No. 3 at 230-231.) Elsewhere in the room, the officers found Petitioner's business

15    card and his card for a video rental store, as well as his toiletry kit. (Lodged Doc. No. 3 at 234-235.)

16    They also found a .22 caliber semi-automatic handgun and $3,750 cash, some of which was stained

17    red. (Lodged Doc. No. 3 at 233-234.)

18       While the room was being searched, officers took Petitioner out to the parking lot and

19    brought the witnesses by individually to see if they could identify Petitioner. (Lodged Doc. No. 3

20    at 165, 191-192, 196, 242.) Ms. Zizzo, Ms. Tarver, and Mr. Amposta all independently identified

21    Petitioner as the man who robbed the bank and drove the car that emitted the colored smoke.

22    (Lodged Doc. No. 3 at 165-167, 191-192, 196.) They also identified Petitioner in court. (Lodged

23    Doc. No. 3 at 166, 193, 197.)

24                  **STANDARD OF REVIEW**

25       The Antiterrorism and Effective Death Penalty Act of 1996 (28 U.S.C. § 2254)

26    ("AEDPA") governs this case because the Petition was filed after April 24, 1996. *See* 28 U.S.C. §

27    2254; *Lindh v. Murphy*, 521 U.S. 320, 327, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997); *Campbell*

28    *v. Rice*, 408 F.3d 1166, 1169 (9th Cir. 2005) (en banc). Under common law, a Writ of Habeas

1  Corpus is extraordinary relief, appropriate only in cases of "extreme malfunctions" of the state

2  criminal justice system. *Brecht v. Abrahamson*, 507 U.S. 619, 634, 113 S. Ct. 1710, 123 L. Ed. 2d

3  353 (1993). The AEDPA even further restricts the power of federal courts to grant writs of habeas

4  corpus to state prisoners, however (*Williams v. Taylor*, 529 U.S. 362, 412, 120 S. Ct. 1495, 146 L.

5  Ed. 2d 389 (2000); *Lindh*, 521 U.S. at 320); where the state has adjudicated the merits of a claim,[1/]

6  the federal court "*shall not*" disturb that judgment "*unless*" the state court decision "was contrary to,

7  or involved an unreasonable application of, clearly established [United States Supreme Court] law,

8  . . . or . . . was based on an unreasonable determination of the facts in light of the evidence presented

9  in the state court proceeding[.]" 28 U.S.C. § 2254(d) (emphasis added); *Duhaime v. Ducharme*, 200

10  F.3d 597, 600 (9th Cir. 1999). The federal court also must presume the state court's factual findings

11  to be correct and may not disturb them absent clear and convincing contradictory evidence. 28

12  U.S.C. § 2254(e)(1); *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004); *see also Lambert v.*

13  *Blodgett*, 393 F.3d 943, 976 (9th Cir. 2004) (presumption applies equally to express and implied

14  factual findings).

15      A state court decision is not "contrary to" established United States Supreme Court law

16  unless it fails to apply the published jurisprudence of that Court, or reaches a result different from

17  that Court on materially indistinguishable facts. *Bell v. Cone*, 535 U.S. 685, 694, 122 S. Ct. 1843,

18  152 L. Ed. 2d 914 (2002). "[A] federal habeas court may not issue the writ simply because that court

19  concludes in its independent judgment that the relevant state court decision applied clearly

20  established federal law erroneous or incorrectly. Rather, that application must also be unreasonable."

21  *Williams*, 529 U.S. at 411-12; *Woodford v. Visciotti*, 537 U.S. 19, 25, 123 S. Ct. 357, 154 L .Ed. 2d

22  279 (2002); *see also Arredondo v. Ortiz*, 365 F.3d 778, 782-83 (9th Cir. 2004) (only the United

23  States Supreme Court's holdings are binding on the state court and only those holdings need be

24

---

25      1. Where, as here, the state's highest court issues a summary or "silent" denial, the federal
26  court treats it as an adjudication on the merits and "looks through" to the last state-court opinion
    involving a discussion. *See* 28 U.S.C. § 2254(d); *Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S. Ct.
27  2590, 115 L. Ed. 2d 706 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n.2 (9th Cir. 2000);
    *Vansickel v. White*, 166 F.3d 953, 957 (9th Cir. 1999). Here, as is generally the case, the last
28  reasoned state-court opinion was the Court of Appeal's September 26, 2006, opinion affirming the
    judgment (Lodged Doc. No. 7).

1  applied reasonably); *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003); *Duhaime*, 200 F.3d at

2  600.  It is the habeas applicant's burden to show the state court applied established United States

3  Supreme Court precedent in an objectively unreasonable manner.  *Price v. Vincent*, 538 U.S. 634,

4  641, 123 S. Ct. 1848, 155 L. Ed. 2d 877 (2003).

5  **ARGUMENT**

6  I.

7  **GROUND ONE OF THE PETITION PROVIDES NO BASIS FOR**
   **ISSUING THE EXTRAORDINARY WRIT OF HABEAS CORPUS**

8  **BECAUSE IT PRESENTS A CLAIM NOT COGNIZABLE IN FEDERAL**
   **HABEAS PROCEEDINGS**

9

   **A.  This Court Should Reject Ground One Because It Presents No Cognizable**

10     **Claim**

11         In Ground One of the Petition, Petitioner asserts this Court must overturn the state's

12  court's decisions and grant him the extraordinary relief of a writ of habeas corpus because the State

13  violated his Fourth Amendment right to be free from unreasonable searches and seizures when it

14  denied his motion to suppress evidence obtained during the search of his motel room.  (Pet. at 6.)

15  The United States Supreme Court has decided that where the state has provided the Petitioner a full

16  and fair opportunity to litigate the search-and-seizure claim in state court, the claim "is not

17  cognizable in federal habeas proceedings[.]"  *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir.

18  1996) (citing *Stone v. Powell*, 428 U.S. 465, 481-82, 96 S. Ct. 3037, 3046-47, 49 L. Ed. 2d 1067

19  (1976)).  So long as state procedures existed by which the Petitioner could challenge–and, if the

20  claim were meritorious, receive redress for–an alleged Fourth Amendment violation, "the state

21  prisoner *may not* be granted federal habeas corpus relief on the ground that the evidence obtained

22  in an unconstitutional search or seizure was introduced at his trial."  *Stone*, 428 U.S. at 493-95

23  (emphasis added).  This is so even if the Petitioner failed to avail himself of those procedures.  *Ortiz-*

24  *Sandoval*, 81 F.3d at 899 ("The relevant inquiry is whether Petitioner had the opportunity to litigate

25  his claim, not whether he did in fact do so or even whether the claim was correctly decided").

26         The California Penal Code makes special provision for search-and-seizure evidentiary

27  challenges; under California Penal Code section 1538.5 et seq., a Defendant can move to exclude

28  evidence on Fourth Amendment grounds anytime before or during trial–indeed, before he is even

1    held to answer the charges. Cal. Penal Code § 1538.5, subd. (a)-(i). If his suppression motion is

2    unsuccessful, he can immediately appeal the denial by means of a special writ petition to the Court

3    of Appeal, *see, e.g., Haupt v. Dillard*, 17 F.3d 285, 288-89 (9th Cir. 1994), or he can raise the issue

4    in a post-conviction appeal.

5         Here, Petitioner challenged the admission of the evidence obtained from his hotel room

6    on Fourth Amendment search-and-seizure grounds before trial. (Lodged Doc. No. 2 at 47-52.) He

7    then raised the issue after trial on direct appeal (Lodged Doc. No.4 at 12-17), and again in his

8    petition for review to the state's highest court (Lodged Doc. No.12-19). The state courts considered

9    and rejected his claim. (Lodged Docs. No. 2, 7, 9.) That these avenues were available to him, and

10   that he moreover actually pursued them, is conclusive proof he was afforded a full and fair

11   opportunity to litigate his claim in state court. *See Moormann v. Schriro*, 426 F.3d 1044, 1053 (9th

12   Cir. 2005). Accordingly, the Fourth Amendment challenge he presents in Ground One of the

13   Petition is not cognizable on federal habeas review, and this Court should reject it.

**II.**

**GROUND TWO OF THE PETITION PROVIDES NO BASIS FOR ISSUING THE EXTRAORDINARY WRIT OF HABEAS CORPUS BECAUSE THE STATE COURTS REJECTED THE CLAIM AND THEIR DECISION WAS BASED UPON A REASONABLE APPLICATION OF CONTROLLING UNITED STATES SUPREME COURT LAW**

19        In Ground Two of the Petition, Petitioner asserts the evidence was insufficient to support

20   the judgment because it did not establish the force or fear element of the crime of robbery. (Pet. at

21   7.) This Court should reject the claim because the state's courts rejected the claim, and their decision

22   was neither contrary to, nor an unreasonable application of, the controlling United States Supreme

23   Court law. See 28 U.S.C. § 2254(d), (e)(1); *Duhaime*, 200 F.3d at 600; *Taylor*, 366 F.3d at 999;

24   *Lambert*, 393 F.3d at 976. A federal court sitting in habeas review of the sufficiency of the evidence

25   supporting a state court judgement accords that judgment great deference and will not disturb it

26   unless, viewing all evidence presented at trial–and all reasonable inferences to be drawn from that

27   evidence–in the light most favorable to the judgment, no rational trier of fact could have reached the

28   verdict the state court reached. *See* 28 U.S.C. §§ 2254(d), (e)(1); *Schlup v. Delo*, 513 U.S. 298, 330,

1    115 S. Ct. 851, 130 L. Ed. 2d 808 (1995); *Chein v. Shumsky*, 373 F.3d 978, 983 (9th Cir. 2004) (en

2    banc) (*Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (standard applies

3    to federal habeas sufficiency of the evidence claims); *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir.

4    2005), *amended* 2005 WL 1653617, 05 Cal. Daily Op. Serv. 6042, 2005 Daily Journal D.A.R. 8288

5    (9th Cir.(Cal.) July 08, 2005) (No. 04-15562).    The federal court does not re-weigh the evidence

6    presented at trial.  *Payne v. Borg*, 982 F.2d 335 (9th Cir. 1992); *Shumate v. Newland*, 75 F. Supp.

7    2d 1076, 1097 (N.D. Cal. 1999). It does not ask whether the state court's judgment was *correct*, only

8    whether it was *rational. Herrera v. Collins*, 506 U.S. 390, 402, 113 S. Ct. 853, 122 L. Ed. 2d 203

9    (1993).    Sufficiency claims on federal habeas are judged by the elements defined by state law.

10   *Jackson*, 443 U.S. at 324 n.16; *Davis v. Woodford*, 333 F.3d 982, 992 (9th Cir. 2003), *amended to*

11   *add dissent*, 384 F.3d 628 (9th Cir. 2004).

12          Under California law, robbery is the felonious taking of personal property from the

13   possession or immediate presence of a person against his will by means of force or fear.  Cal Pen.

14   Code § 211. The terms "force" and "fear" have no technical meaning, but are presumed to be within

15   the understanding of a jury based on its common sense. *People v. Mungia*, 234 Cal. App. 3d 1703,

16   1707, 1709, 286 Cal. Rptr. 394 (1991); *People v. Wright*, 52 Cal. App. 4th 203, 210,  59 Cal. Rptr.

17   2d 316 (1996).  The "force or fear" element "is satisfied when there is sufficient fear to cause the

18   victim to comply with the unlawful demand for his [or her] property." *People v. Ramos*, 106 Cal.

19   App. 3d 591, 601-02, 165 Cal. Rptr. 179 (1980), *overruled on another ground* by *People v. Scott*,

20   9 Cal. 4th 331, 351 n.16, 885 P.2d 1040, 36 Cal. Rptr. 2d 627 (1994). A victim need not testify that

21   he or she was afraid as long as there is some evidence from which a jury may infer that he or she was

22   afraid and that this fear allowed the crime to be accomplished. *People v. Davison*, 32 Cal. App. 4th

23   206, 212, 38 Cal. Rptr. 2d 438 (1995); *Mungia*, 234 Cal. App. 3d at 1709 n.2; *see People v. Renteria*,

24   61 Cal. 2d 497, 499, 393 P.2d 413, 39 Cal. Rptr. 213 (1964).    Actual fear may be inferred from

25   circumstances surrounding the offense that are reasonably calculated to produce fear. *People v.*

26   *Cuevas*, 89 Cal. App. 4th 689, 698, 107 Cal. Rptr. 2d 529 (2001); *People v. Brew*, 2 Cal. App. 4th

27   99, 104, 2 Cal. Rptr. 2d 851 (1991).    Even where a victim downplays his fear, the factfinder

28   nonetheless may infer it if the circumstances surrounding the offense are reasonably calculated to

1    produce fear, especially where the victim complied with the unlawful demand. *See, e.g.*, *Renteria*,

2    61 Cal. 2d at 499; *Davison*, 32 Cal. App. 4th at 212; *Ramos*, 106 Cal. App. 3d at 601-02 ("the

3    element of fear for purposes of robbery is satisfied when there is sufficient fear to cause the victim

4    to comply with the unlawful demand for [the] property"), *overruled on another ground by Scott*, 9

5    Cal.4th at 353 n.16.

6         Here, the victim, Ms. Zizzo, expressly testified she was afraid when Petitioner demanded

7    money from her by means of a note reading, "This is a robbery," and instructing her not to use any

8    theft deterrents.  She also testified she immediately complied with Petitioner's demand and gave him

9    the money.  This testimony alone, viewed in the light most favorable to the judgment, is enough to

10   establish Petitioner used fear, in the common sense meaning of the word, to accomplish the robbery.

11   *See, e.g.*, *People v. Escobar*, 3 Cal. 4th 740, 750, 837 P.2d 1100, 12 Cal. Rptr. 2d 586 (1992); *People*

12   *v. Johnson*, 26 Cal. 3d 557, 576, 606 P.2d 738, 162 Cal. Rptr. 431 (1980).

13        But even if Ms. Zizzo had not admitted to being fearful, the evidence still would have been

14   sufficient to establish the fear element of robbery because there was other evidence from which a

15   jury could infer that she was afraid and that this fear allowed Petitioner to accomplish the crime.

16   Petitioner was only feet away from Ms. Zizzo when he handed her the letter telling her he was

17   robbing her and demanding she hand over the money.  Ms. Zizzo had no way of knowing whether

18   Petitioner was armed.  She was afraid and immediately complied with his demands, even attempting

19   to follow his instructions not to include a dye pack.  That Ms. Zizzo's response was in keeping with

20   her training in no way undercuts her fear and Petitioner's reliance upon it to commit his crime; on

21   the contrary, the fact the bank would instruct its employees to take all such demands seriously and

22   to give up the money without resistance only underscores the danger and fear inherent in such a

23   situation.

24        Moreover, Petitioner's initial robbery announcement and demand was not the only time

25   he used fear to effect the robbery.  As robbery is a continuing offense, California courts long have

26   held that the force-or-fear element of the offense may be established at any time before the robbery

27   is complete.  *People v. Hill*, 17 Cal. 4th 800, 850, 952 P.2d 673, 72 Cal. Rptr. 2d 656 (1998); *People*

28   *v. Cooper*, 53 Cal. 3d 1158, 1165 n.8, 811 P.2d 742, 282 Cal. Rptr. 450 (1991).  Accordingly, a theft

1  may become a robbery if the perpetrator, having gained possession of the property in a peaceful

2  manner such as by pretext, then uses force or fear in order to retain the res or to carry it away.

3  (*Cooper,* 53 Cal. 3d 1158, 1165 n.8.) Thus, the use of force or fear is sufficient if it occurs either

4  at the moment of the taking or during the period of carrying the res away to a place of temporary

5  safety. (*Ibid.*) Here, after Ms. Zizzo already had given Petitioner all her money, he warned her,

6  "You never saw me." Viewing this evidence in the light most favorable to the judgment and drawing

7  from it all reasonable inferences, this statement was an implied threat to Ms. Zizzo not to report the

8  crime or identify Petitioner as the robber. Ms. Zizzo took the threat seriously enough to wait until

9  Petitioner left the building before sounding the alarm. Since under California law the robbery was

10 still ongoing when Petitioner made this threat and Ms. Zizzo reacted to it, this was yet another

11 rational hypothesis by which the jury could have found the "force or fear" element of robbery.

12      When a California court entertains a challenge to the sufficiency of the evidence, it applies

13 the *Jackson* (443 U.S. at 319) standard. *Johnson,* 26 Cal.3d at 575-78. Accordingly, the state's

14 intermediate appellate court reviewed all of the evidence in this case in the light most favorable to

15 the judgment to determine whether a reasonable jury could have found Petitioner used force or fear

16 to accomplish the bank robbery. The court then held,

17          From the totality of this evidence, a reasonable jury could have found that the

18          victim bank teller was in fear when she complied with [Petitioner's] demand for

19          money and waited to report the robbery until after he had left the bank.

20          [Citation] Substantial evidence thus supports the jury's finding [Petitioner] used

21          fear to commit the bank robbery and his conviction will not be disturbed on

22          appeal.

23 (Lodged Doc. No. 7 at 15-18.) This decision was a rational one based on a reasonable interpretation

24 of the facts, and was not an unreasonable application of, or contrary to, *Jackson v. Virginia.*

25 Therefore, this Court should not disturb it.

26 ///

27 ///

28 ///

Answer; Memorandum of Points and Authorities                    Case No. 07cv2315 J (JMA)

**CONCLUSION**

The State provided, and Petitioner availed himself of, procedures to challenge evidence on Fourth Amendment search-and-seizure grounds. Therefore, that evidentiary challenge is not cognizable on federal habeas review. Accordingly, this Court should reject Ground One of the Petition.

The state courts applied the *Jackson* standard to reject Petitioner's challenge to the sufficiency of the evidence supporting the fear element of robbery. That decision was not contrary to, or an unreasonable application of, controlling United States Supreme Court law. Accordingly, Ground Two provides no basis to issue the extraordinary writ of habeas corpus, and this Court should reject it.

**WHEREFORE**, Respondent respectfully requests this Court deny the writ with prejudice.

Dated: May 6, 2008

Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of the State of California

DANE R. GILLETTE
Chief Assistant Attorney General

GARY W. SCHONS
Senior Assistant Attorney General

RHONDA CARTWRIGHT-LADENDORF
Supervising Deputy Attorney General

s/Stacy Tyler

STACY TYLER
Deputy Attorney General

Attorneys for Respondent
E-mail:  Stacy.Tyler@doj.ca.gov

ST:mgs
80234524.wpd
SD2007803271

Answer; Memorandum of Points and Authorities

Case No. 07cv2315 J (JMA)

16

1    ## CERTIFICATE OF SERVICE BY U.S. MAIL

2    Case Name:    **Pressly v. Haws**              No.: **07cv2315 J (JMA)**

3    I declare:

4    I am employed in the Office of the Attorney General, which is the office of a member of the
     California State Bar, at which member's direction this service is made. I am 18 years of age or
5    older and not a party to this matter. I am familiar with the business practice at the Office of the
     Attorney General for collection and processing of correspondence for mailing with the United
6    States Postal Service. In accordance with that practice, correspondence placed in the internal
     mail collection system at the Office of the Attorney General is deposited with the United States
7    Postal Service that same day in the ordinary course of business.

8    On <u>May 6, 2008</u>, I served the following documents:

9              **ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS;**
          **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

10

11   by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid,
     in the internal mail collection system at the Office of the Attorney General at 110 West A Street,
12   Suite 1100, P.O. Box 85266, San Diego, CA 92186-5266, addressed as follows:

13   **Electronic Mail Notice List**
     I have caused the above-mentioned document(s) to be electronically served on the following
14   person(s), who are currently on the list to receive e-mail notices for this case:

15   NONE

16   **Manual Notice List**
     The following are those who are **not** on the list to receive e-mail notices for this case (who
17   therefore require manual noticing):

18   Stuart Scott Pressly
     V-48636
19   California State Prison
     Los Angeles County
20   P.O. Box 8457
     Lancaster, CA 93539-8457
21   In Pro Pro

22   I declare under penalty of perjury under the laws of the State of California the foregoing is true
     and correct and that this declaration was executed on May 6, 2008, at San Diego, California.

23

24

25            Maria G. Stawarz

26   _____          _____
              Declarant                          Signature
27
     SD2007803271
28   80235212.wpd