UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STUART S. PRESSLY,<br><br>   Petitioner,<br><br>v.<br><br>F.B. HAWS, WARDEN<br><br>   Respondent. | Case No. 07-CV-2315-J (JMA)<br><br>**REPORT AND RECOMMENDATION DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

Petitioner Curtis Pressly ("Petitioner" or "Pressly") is a California state prisoner proceeding *pro se* with a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. He was convicted by a jury of robbery. The trial court found him guilty of being a felon in possession of a firearm, and also found that he had numerous prior convictions for serious and violent felonies. Petitioner asserts his incarceration is unlawful because the search of his motel room violated search and seizure law and because the evidence adduced at trial was insufficient to support the judgment. After reviewing the Petition, Respondent's Answer and Memorandum of Points and Authorities and exhibits lodged with the Court, the undersigned recommends that the Petition be **DENIED** for the reasons stated below.

## I.     PROCEDURAL BACKGROUND

On April 23, 2005, a San Diego County jury convicted Petitioner of robbery (Cal. Penal Code § 211), and the trial court found him guilty of being a felon in possession of a firearm (Cal. Penal Code § 12021(a)(1). Pet. [Doc. No. 1] at 2; Lodgment 7 at 1.  The court also found that he had six prior convictions for serious and violent felonies, which subjected Petitioner to mandatory increased prison terms under California's recidivist offender sentencing laws. Lodgment 7 at 1-2.  On May 23, 2005, the court sentenced Petitioner to a total term of 60 years to life in state prison – 25 years to life for the robbery, a consecutive 25 years to life for the firearm possession and a consecutive 10 years (5 years each) for two of the serious felony convictions. Pet. at 1; Lodgment 7 at 2.  The California Court of Appeal affirmed the conviction and sentence (Lodgment 7 at 2) and the California Supreme Court denied Petitioner's petition for review (Lodgment 9).

On December 10, 2007, Petitioner filed the instant Petition for Writ of Habeas Corpus alleging two claims. In Ground One, Petitioner asserts that certain evidence obtained from a hotel room should have been excluded from his trial because it was obtained in violation of his right under the Fourth Amendment to be free from unreasonable searches and seizures. Pet. at 6.  In Ground Two, Petitioner asserts that the evidence adduced at trial was insufficient to support his robbery conviction because it did not establish "fear" which is a required element of the crime of robbery under California law. *Id.* at 7.

Petitioner filed a motion for stay and abeyance on May 21, 2008 [Doc. 13] which this Court denied on March 20, 2009 [Doc. 26], following a Report by the undersigned recommending denial [Doc. 23].  This Court issued an Order setting a deadline of May 1, 2009 for Petitioner to file a traverse to the Defendants' Answer.  [Doc. 27].  No traverse was filed.

## II.    FACTUAL BACKGROUND

The following statement of facts is taken primarily from the appellate court opinion affirming Petitioner's conviction on direct review.  This Court gives deference to

state court findings of fact and presumes them to be correct. 28 U.S.C. § 2254(e); *see also Sumner v. Mata*, 449 U.S. 539, 545-47 (1981) (stating that deference is owed to factual findings of both state trial and appellate courts).

On October 1, 2003, Pressly was arrested for a robbery of the Union Bank of California ("Union Bank") at the corner of Fourth Avenue and Laurel Street in San Diego. Lodgment 7 (Appellate Opinion) at 2. Cristina Zizzo was working as a bank teller at the Union Bank on the morning of October 1, 2003 when a man approached the counter and handed her a demand letter that said something like, "This is a robbery. No alarm, no bait, no dye packs." *Id.* at 7. Even though the man had made no threats and not displayed a weapon, Zizzo said she was "a little bit" afraid. *Id.* She thus responded to the note as she had been trained to do, which was not to resist, but rather to comply with a robber's demands, by immediately removing the money from her two drawers to give to the man. *Id.*

She had unloaded all but one stack of twenty dollar bills from the top drawer and was preparing to empty the next drawer when the robber pointed to the remaining stack of bills and told her, "Give me those 20's too," *Id.* at 7-8. Zizzo had not initially included that stack because the demand note had instructed her not to give the robber a dye pack, and that stack contained a dye pack. *Id.* at 7. After Zizzo handed over all the money in her two drawers, the robber told her, "You never saw me" as he turned and left the building, heading west down Laurel. *Id.* at 8. Zizzo waited until the robber had left the building to activate the silent alarm under her counter station to alert the police to the robbery. *Id.*

Jennifer Tarver was driving her car near Union Bank around the time it was robbed when she saw someone driving away from the bank in a Toyota Corolla with orange smoke bellowing from inside. *Id.* Tarver had previously worked as a bank teller, and recognized the colored smoke as that from a bank dye pack and "strongly associated the possibility of a bank robbery." *Id.* When the car pulled into a nearby parking lot, Tarver followed it, parked at a distance and continued to watch the car as she called 911 on her cell phone to report her suspicions. *Id.*

Filisimo Amposta was sitting in his car in the parking lot when the Toyota pulled up next to him, with red smoke pouring out of it, and parked. *Id.* at 9. He made eye contact with the driver when the man got out and tried to wave the smoke out of the car. *Id.*

Tarver had continued to observe the driver while he was in the parking lot, and as soon as the Toyota exited the lot, she began following it again, relaying the Toyota's progress to an emergency dispatcher while she drove. *Id.* at 8. When the man driving the Toyota realized he was being followed, he accelerated and ran a stop sign. Tarver then ended her pursuit of the robber and returned to Union Bank to talk with police officers who had arrived in response to the robbery. *Id.* at 8-9. After telling police what she had witnessed, an officer took Tarver in his squad car to the Days Inn Motel on Pacific Highway because a car like the robber's had been seen parked near the motel. *Id.* at 9.

Detective James McGhee of the Robbery Division was already at the Days Inn when Tarver and the officer arrived. *Id.* at 5. McGhee had responded to a police radio broadcast that the bank robbery suspect was believed to be at the motel, and that a car matching the robber's had been found nearby. *Id.* As he pulled into the parking lot of the Days Inn, he saw a man matching the description of the suspect walking on the third floor toward an elevator away from room 315, which had its door open. *Id.* Leaning over the walkway railing in front of the room was a woman. *Id.* Detective McGhee saw the man get into the elevator and go down to the first floor, where other officers, who had been waiting there, immediately detained him. *Id.* When asked permission to search room 315, Pressly said, "Go ahead. I don't care. I'm not staying in that room." *Id.* at 3.

McGhee then went upstairs to talk to the woman. *Id.* He asked for her identification, and she went into the room to get it, leaving the door open. *Id.* McGhee followed her in. *Id.* Near the door in plan view was a red-stained cardboard beer carton filled with red-stained cash. *Id.* McGhee recognized the stain as the type caused by dye packs. He escorted the woman back out of the room and waited for the lead

detective to arrive. *Id.*

Shortly thereafter, lead detective Robert Sylvester arrived. Lodgement 3 at 217. When he got there, he saw Petitioner being detained by officers. *Id.* at 226. Petitioner's hair and body were wet, as though he had just taken a shower. *Id.* at 227, 240. There were red stains on his hands and fingernails. *Id.* at 227-228, 240. McGhee, along with the woman now identified as Rubin, met with lead robbery detective Robert Sylvester and Special Agent James Hardie of the FBI who had arrived at the scene outside room 315. Lodgment 7 at 6. Sylvester also indicated that he had received oral consent from the suspect to search the room. *Id.* Because it appeared that Rubin was associated with Room 315 as well, Hardie asked her if he and the police officers could search the room. Rubin said, "Yes," and also signed a form authorizing a search of the room. *Id.*

Sylvester, Hardie and San Diego Police officers then searched the room, recovering dye-stained money from the Heineken beer box and throughout the room, dye-stained clothing from the bathroom tub, and a gun from under the bed. *Id.* Elsewhere in the room, the officers found Pressly's business card and his video rental card in a shaving kit. *Id.* at 10.

While the room was being searched, officers took Petitioner out to the parking lot and brought the witnesses by individually to see if they could identify Petitioner. Lodgment 3 at 165, 191-192, 196. Ms. Zizzo, Ms. Tarver and Mr. Amposta all independently identified Petitioner as the man who robbed the bank and drove the car that emitted the colored smoke. *Id.* at 165-67, 191-92, 196. They also identified Petitioner in court. *Id.* at 166, 193, 197.

### III.  DISCUSSION

#### A.  Standard of Review

Title 28, United States Code, § 2254(a), sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the

>ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C § 2254(a).

The Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA") amended section 2254 to provide a "highly deferential standard for evaluating state court rulings." *Lindh v. Murphy*, 521 U.S. 320 (1997). Under 28 U.S.C. § 2254(d):

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

To obtain federal habeas relief, Pressly must satisfy either § 2254(d)(1) or § 2254(d)(2). *See Williams v. Taylor*, 529 U.S. 362, 403 (2000). The Supreme Court interprets § 2254(d)(1) as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams*, 529 U.S. at 412-13; *see Lockyer v. Andrade*, 538 U.S. 63, 73-74 (2003).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991). If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. *See Delgado v. Lewis*, 223 F.3d

976, 982 (9th Cir. 2000) (overruled on other grounds by *Lockyer*, 538 U.S. at 75-76); *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003).  However, a state court need not cite Supreme Court precedent when resolving a habeas corpus claim. *Early v. Packer*, 537 U.S. 3, 8 (2002).  "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent,]" the state court decision will not be "contrary to" clearly established federal law. *Id*.

**B.   Petitioner's Full and Fair Opportunity To Litigate His Search And Seizure Claim In State Court Precludes Him From Raising The Issue Again In A Federal Habeas Petition**

In Ground One of his Petition, Petitioner contends that his motel room was searched and evidence was seized in violation of the Fourth Amendment.  Specifically, Petitioner asserts the evidence was seized without a search warrant or Petitioner's consent.  Pet. at 6.  Respondent contends Petitioner had a full and fair opportunity to litigate his Fourth Amendment claim in state court, and as such, cannot raise the issue in a federal habeas corpus challenge.  Answer at 11-12.

Clearly established federal law provides that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976); *see also Villafuerte v. Stewart*, 111 F.3d 616, 627 (9th Cir. 1997) (finding Villafuerte had full and fair opportunity to litigate in state court and was not entitled to federal habeas when he raised his claim in post-conviction proceedings in state court); *Gordon v. Duran*, 895 F.2d 610, 613 (9th Cir. 1990) (holding Gordon had an opportunity for full and fair litigation of his Fourth Amendment claim in state court even when there was a dispute as to whether Gordon actually litigated that claim).

Under *Stone*, the "relevant inquiry is whether petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even whether the claim was correctly decided." *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996). California Penal Code § 1538.5 specifically allows criminal defendants to move to suppress evidence obtained in violation of the Fourth Amendment.  This provision

provides criminal defendants with an opportunity for "full and fair litigation" of their Fourth Amendment claims, regardless of whether the criminal defendant litigates the issue. *Gordon*, 895 F.2d at 613; Cal. Pen. Code § 1538.5.

Here, Petitioner had ample opportunity in state court for full and fair litigation of his Fourth Amendment search and seizure claim. Petitioner fully exercised his rights under California Penal Code § 1538.5 and before trial moved to suppress all the evidence from the search of the motel room. Lodgment 4 at 13. The trial court denied Pressly's motion on the basis that Ms. Rubin gave police consent to search the motel room and was authorized to give such consent as she had an association with the hotel room, since she had retrieved identification for police from her purse inside the room. *Id.* Therefore, the trial court found that the search was justified by this consent and denied Pressly's motion to suppress evidence. *Id.* Petitioner then appealed to the California Court of Appeal which reviewed his claim and, in a reasoned decision, affirmed the trial court's dismissal. Lodgment 7 at 11-15. The appellate court concluded that the officers reasonably relied on Ms. Rubin's oral and written consent to search the motel room and that the trial court therefore properly denied Pressly's motion to suppress the evidence found during that search. *Id.* at 15.[1] Lastly, Petitioner appealed to the California Supreme Court, which denied his petition for review without comment. Lodgment 9. Petitioner was not only presented with opportunities for a full and fair litigation of his Fourth Amendment claim, but he fully utilized and exhausted his avenues for relief under the state court system.

Petitioner's full and fair opportunity in state court to litigate his illegal search and seizure claim precludes Petitioner from raising the issue again for federal habeas review. *See, e.g., Villafuerte*, 111 F.3d at 627. Accordingly, this Court recommends habeas relief be **DENIED** as to Ground One.

---

[1] While the trial court found that Pressly's statements to police that they could search room 315 did not constitute voluntary consent because he was not *Mirandized* beforehand, the appellate court found that the trial court could also have properly denied Pressly's suppression motion on the grounds that he had no legitimate expectation of privacy in room 315, due to his denial of any association with the room. Lodgment 7 at 13.

### C. Sufficiency Of The Evidence Regarding Robbery

#### 1. Legal standards

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). There is sufficient evidence to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). *See also Prantil v. California*, 843 F.2d 314, 316 (9th Cir. 1988) (per curiam).

A petitioner in a federal habeas corpus proceeding "faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005). A federal court reviewing a state court conviction on a habeas petition does not determine whether the evidence established guilt beyond a reasonable doubt. *Payne v. Borg*, 982 F.2d 335, 338 (9th Cir. 1992), *cert denied*, 510 U.S. 843 (1993). The federal court determines only whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id., quoting Jackson*, 443 U.S. at 319. Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt may the writ be granted. *Jackson*, 443 U.S. at 324.

On habeas review, a federal court should take into consideration all of the evidence presented at trial. *Lamere v. Slaughter*, 458 F.3d 878, 882 (9th Cir. 2006). However, if confronted by a record that supports conflicting inferences, the court "must presume -- even if it does not affirmatively appear in the record -- that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326.

## 2. Element of force or fear

Petitioner's second claim is that there was not sufficient evidence of the "use of force or fear" element of robbery to support Petitioner's conviction for robbery. Pet. at 7. Pressly argues that because there was no evidence he threatened or displayed a weapon, and the bank teller victim testified she was only in "a little" fear, the evidence was not sufficient to show any force or the degree of fear necessary for the crime of robbery. The Court of Appeal specifically rejected this contention, explaining:

> With regard to the crime of robbery, section 211 provides that "[r]obbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." . . . Where a victim has downplayed his or her fear, such may be inferred from the circumstances surrounding the offense that are reasonably calculated to produce fear. *People v. Cuevas*, 89 Cal.App.4th 689, 698 (2001). Moreover, even where a victim does not expressly testify that he or she was afraid in connection with the taking, if there is some evidence from which a trier of fact can infer the victim was "in fact afraid, and that such fear allowed the crime to be accomplished [citations]" (*People v. Mungia*, 234 Cal.App.3d 1703, 1709, n. 2), the element of fear for robbery will be satisfied. *Id.*

Lodgment 7 at 16-17.

Applying this standard, the Court of Appeal found there was sufficient evidence that the bank teller was in fear (*Id.* at 17-18):

> Here, the record before the jury, viewed in accordance with the above rules, showed the bank teller victim was in fear while being robbed by Pressly. Not only had the teller testified she was "a little afraid" when she read Pressly's robbery notes which he had pushed across the counter toward her, she immediately complied with his written demand, giving him all the money from her top drawer with the exception of the package of "20s" containing the dye pack according to his instructions. When Pressly then demanded she "give [him] those 20s" as she was closing that drawer, she immediately handed "those 20s" to him, fully complying with his subsequent verbal command. After the teller had given Pressly all the money from his two drawers, she waited until he had left the bank to push the silent alarm and alert her supervisor and coworkers that she had been robbed, consistent with the bank policy for her protection and others in the bank and Pressly's implied threat that she never saw him.

The Court concluded that the jury's finding that Pressly used fear to commit the bank robbery was reasonable and supported by "substantial evidence" (*Id.* at 18):

> From the totality of this evidence, a reasonable jury could have found that the victim bank teller was in fear when she complied with Pressly's demand for

money and waited to report the robbery until after he had left the bank. *See People v. Hill*, 17 Cal.4th 800, 850 (1998). Substantial evidence thus supports the jury's finding Pressly used fear to commit the bank robbery and his conviction will not be disturbed on appeal.

Viewing the evidence in the light most favorable to the verdict, and for the reasons described by the California Court of Appeal, the undersigned concludes that there was sufficient evidence from which a rational trier of fact could have found beyond a reasonable doubt that the Petitioner was guilty of robbery as defined by California law. The state appellate court opinion rejecting Petitioner's claim is a reasonable construction of the evidence in this case and is not contrary to, or an objectively unreasonable application of, clearly established Supreme Court law. *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002); *see also* 28 U.S.C. § 2254(d)(1). Accordingly, this Court recommends habeas relief be **DENIED** as to Ground Two.

## IV. CONCLUSION AND RECOMMENDATION

Having reviewed the matter, the undersigned recommends that Petitioner's Petition for Writ of Habeas Corpus be **DENIED**. This Report and Recommendation is submitted to the Honorable Napoleon A. Jones, Jr., the United States district judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).

**IT IS ORDERED** that no later than **October 21, 2009** any party may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **October 30, 2009**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991)

**IT IS SO ORDERED**

DATED: September 30, 2009

Jan M. Adler
U.S. Magistrate Judge

07cv2315