UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STUART S. PRESSLY,<br><br>           Petitioner,<br><br>     v.<br><br>F. B. HAWS, Warden,<br><br>           Respondent. | Civil No. 07CV2315-WQH (JMA)<br><br>**ORDER:**<br><br>**(1) ADOPTING THE REPORT AND RECOMMENDATION;**<br><br>**(2) DENYING THE PETITION FOR WRIT OF HABEAS CORPUS.** |

Before this Court is Magistrate Judge Jan M. Adler's Report and Recommendation ("R&R") recommending that the Court deny Petitioner Curtis Pressly's ("Petitioner") Petition for Writ of Habeas Corpus and dismiss the case with prejudice. This Court has considered Petitioner's Petition, F.B. Haws's ("Respondent") Answer and Memorandum of Points and Authorities, and all supporting documents submitted by the parties. Having considered these documents, this Court **DENIES** Petitioner's Petition for Writ of Habeas Corpus and **DISMISSES** the action with prejudice.

## *Factual Background*

28 U.S.C. § 2254(e)(1) provides that a "determination of a factual issue made by a State court shall be presumed to be correct" in a federal habeas corpus petition. "The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.* Accordingly, this Court presumes the following facts, taken from the California Court of Appeal's opinion regarding Petitioner's direct appeal, are correct.

On October 1, 2003, Petitioner was arrested for a robbery of the Union Bank of California ("Union Bank") at the corner of Fourth Avenue and Laurel Street in San Diego. (Lodgment 7 at 2.) Cristina Zizzo was working as a bank teller at the Union Bank on the morning of October 1, 2003 when a man approached the counter and handed her a demand letter that said something like, "This is a robbery. No alarm, no bait, no dye packs." (*Id.* at 7.) Even though the man had made no threats and not displayed a weapon, Zizzo said she was "a little bit" afraid. (*Id.*) She thus responded to the note as she had been trained to do, which was not to resist, but rather to comply with a robber's demands, by immediately removing the money from her two drawers to give to the man. (*Id.*)

She had unloaded all but one stack of twenty dollar bills from the top drawer and was preparing to empty the next drawer when the robber pointed to the remaining stack of bills and told her, "Give me those 20's too." (*Id.* at 7-8.) Zizzo had not initially included that stack because the demand note had instructed her not to give the robber a dye pack, and that stack contained a dye pack. (*Id.* at 7.) After Zizzo handed over all the money in her two drawers, the robber told her, "You never saw me," as he turned and left the building, heading west down Laurel. (*Id.* at 8.) Zizzo waited until the robber had left the building to activate the silent alarm under her counter station to alert the police to the robbery. (*Id.*)

Jennifer Tarver was driving her car near Union Bank around the time it was robbed when she saw someone driving away from the bank in a Toyota Corolla with orange smoke bellowing from inside. (*Id.*) Tarver had previously worked as a bank teller and recognized the colored smoke as that from a bank dye pack and "strongly associated the possibility of a bank robbery."

(*Id.*)  When the car pulled into a nearby parking lot, Tarver followed it, parked at a distance, and continued to watch the car as she called 911 on her cell phone to report her suspicions.  (*Id.*)

Filisimo Amposta was sitting in his car in the parking lot when the Toyota pulled up next to him, with red smoke pouring out of it, and parked.  (*Id.* at 9.)  He made eye contact with the driver when the man got out and tried to wave the smoke out of the car.  (*Id.*)

Tarver had continued to observe the driver while he was in the parking lot, and as soon as the Toyota exited the lot, she began following it again, relaying the Toyota's progress to an emergency dispatcher while she drove.  (*Id.* at 8.)  When the man driving the Toyota realized he was being followed, he accelerated and ran a stop sign.  (*Id.*)  Tarver then ended her pursuit of the robber and returned to Union Bank to talk with police officers who had arrived in response to the robbery.  (*Id.* at 8-9.)  After telling police what she had witnessed, an officer took Tarver in his squad car to the Days Inn Motel on Pacific Highway because a car like the robber's had been seen parked near the motel.  (*Id.* at 9.)

Detective James McGhee of the Robbery Division was already at the Days Inn when Tarver and the officer arrived.  (*Id.* at 5.)  McGhee had responded to a police radio broadcast that the bank robbery suspect was believed to be at the motel, and that a car matching the robber's had been found nearby.  (*Id.*)  As he pulled into the parking lot of the Days Inn, he saw a man matching the description of the suspect walking on the third floor toward an elevator away from room 315, which had its door open.  (*Id.*)  Leaning over the walkway railing in front of the room was a woman.  (*Id.*)  Detective McGhee saw the man get into the elevator and go down to the first floor, where other officers immediately detained him.  *Id.*  When asked permission to search room 315, Petitioner said, "Go ahead.  I don't care.  I'm not staying in that room."  (*Id.* at 3.)

McGhee then went upstairs to talk to the woman.  (*Id.*)  He asked for her identification, and she went into the room to get it, leaving the door open.  (*Id.*)  McGhee followed her.  (*Id.*)  Near the door in plain view was a red-stained cardboard beer carton filled with red-stained cash.  (*Id.*)  McGhee recognized the stain as the type caused by dye packs.  He escorted the woman back out of the room and waited for the lead detective to arrive.  (*Id.*)

Shortly thereafter, lead detective Robert Sylvester arrived. (Lodgment 3 at 217.) When he got there, he saw Petitioner being detained by officers. (*Id.* at 226.) Petitioner's hair and body were wet, as though he had just taken a shower. (*Id.* at 227, 240.) There were red stains on his hands and fingernails. (*Id.* at 227-228, 240.) McGhee, along with the woman now identified as Rubin, met with Sylvester and Special Agent James Hardie of the FBI who had arrived at the scene. (Lodgment 7 at 6.) Sylvester indicated he had received oral consent from the suspect to search the room. (*Id.*) Because it appeared that Rubin was associated with Room 315 as well, Hardie asked her if he and the police officers could search the room. Rubin agreed and signed a form authorizing a search of the room. (*Id.*)

Sylvester, Hardie, and San Diego police officers then searched the room, recovering dye-stained money from the beer box and throughout the room, dye-stained clothing from the bathroom tub, and a gun from under the bed. (*Id.*) Elsewhere in the room, the officers found Petitioner's business card and his video rental card in a shaving kit. (*Id.* at 10.)

While the room was being searched, officers took Petitioner out to the parking lot and brought the witnesses by individually to see if they could identify Petitioner. (Lodgment 3 at 165, 191-92, 196.) Zizzo, Tarver, and Amposta all independently identified Petitioner as the man who robbed the bank and drove the car that emitted the colored smoke. (*Id.* at 165-67, 191-92, 196.) They also identified Petitioner in court. (*Id.* at 166, 193, 197.)

### *Procedural Background*

On April 23, 2005, a jury convicted Petitioner of robbery (Cal. Penal Code § 211), and the trial court found him guilty of being a felon in possession of a firearm (Cal. Penal Code § 12021(a)(1). (Pet. 1.) The court also found Petitioner had six prior convictions for serious and violent felonies, and therefore he was subject to mandatory increased prison terms under California's recidivist offender sentencing laws. (Lodgment 7 at 1-2.) On May 23, 2005, the court sentenced Petitioner to a term of 60 years to life in state prison, which included 25 years to life for the robbery, a consecutive 25 years to life for the firearm possession, and a consecutive ten years for two of the serious felony convictions. (Pet. 1.) On September 28, 2006, the California Court of Appeal affirmed the conviction and sentence. (Lodgment 7 at 2.) The

California Supreme Court denied Petitioner's petition for review on December 13, 2006. (Lodgment 9.)

On December 10, 2007, Petitioner filed the current habeas petition. (Pet. 1.) He asserts two claims. First, Petitioner contends that certain evidence obtained from a hotel room should have been excluded from his trial because it was obtained in violation of his right under the Fourth Amendment to be free from unreasonable searches and seizures. (Pet. 6.) Additionally, he claims the evidence adduced at trial was insufficient to support his robbery conviction because it did not establish "fear," a required element of the crime of robbery under California law. (*Id.*)

On May 21, 2008, Petitioner filed a motion for stay and abeyance. [Doc. No. 13.] The Court denied the motion on March 20, 2009. [Doc. No. 26.] The Court issued an Order setting a deadline of May 1, 2009 for Petitioner to file a traverse to Respondent's Answer. [Doc. No. 27.] No traverse was filed. On September 30, 2009, Magistrate Judge Adler issued an R&R recommending that the Petition be denied. [Doc. No. 28.] To date, Petitioner has not filed objections to the R&R.

## *Legal Standards*

**I.     Scope of Review**

A federal court must grant a petitioner's habeas corpus petition if the prisoner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs all habeas corpus petitions filed after 1996. *See, e.g., Lindh v. Murphy*, 521 U.S. 320, 326 (1997); *Weaver v. Thompson*, 197 F.3d 359, 362 (9th Cir. 1999). Under the AEDPA, a petitioner's habeas corpus petition must show that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal Law" or that the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The United States Supreme Court has determined that a state court's decision is "contrary to" its precedent "if the state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" and arrives at an opposite conclusion than that of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state court's decision is an "unreasonable application" of federal law if "the state court identifies the correct governing legal principle from [the United States Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 412-13. An unreasonable application of federal law requires the state court decision to be more than incorrect or erroneous. *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003). Instead, the state court's application must be "objectively unreasonable." *Id.*

If the dispositive state court decision does not "furnish a basis for its reasoning," however, federal habeas courts must conduct an independent review of the record to determine whether the state court unreasonably applied controlling federal law. *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). However, a state court need not cite Supreme Court precedent when resolving a habeas corpus claim. *Early v. Packer*, 537 U.S. 3, 8 (2002). "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent]," the state court decision will not be "contrary to" clearly established federal law. *Id.*

**II.     Reviewing Magistrate Judge's R&R**

A district court may designate a magistrate judge to propose recommendations in connection with the disposition of "applications for posttrial relief made by individuals convicted of criminal offenses and of prisoner petitions challenging conditions of confinement." 28 U.S.C. § 636(b)(1)(B). The district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3) (2009); *see also United States v. Raddatz*, 447 U.S. 667, 676 (1980) ("[I]n providing

for a 'de novo determination' . . . Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations.").

## *Discussion*

*A. Claim One*

Petitioner contends the trial court erred when it denied his motion to suppress evidence seized from the hotel room. (Pet. 6.)  He argues his Fourth Amendment rights were violated because the evidence was seized without a search warrant or Petitioner's consent. (*Id.*) Respondent states Petitioner had a full and fair opportunity to litigate this claim in state court, and as such, he cannot raise the issue in a federal habeas corpus challenge. (Resp't P. & A. "RPA" 11-12.)

The United States Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone*, 428 U.S. at 481-82.  The Ninth Circuit has stated "[t]he relevant inquiry is whether [the] petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even whether the claim was correctly decided." *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996).

Cal. Penal Code § 1538.5 specifically allows criminal defendants to move to suppress evidence obtained in violation of the Fourth Amendment.  This provision provides criminal defendants with an opportunity for "full and fair litigation" of their Fourth Amendment claims, regardless of whether the criminal defendant litigates the issue. *See Gordon v. Duran*, 895 F.2d 610, 613 (9th Cir. 1990).  Before trial, Petitioner moved to suppress all evidence from the search of the motel room. (Lodgment 4 at 13.)  The trial court denied the motion, stating that Rubin gave police consent to search the motel room and was authorized to give such consent as she had an association with the hotel room.  Specifically, she had retrieved identification for police from her purse inside the room. (*Id.*)  Therefore, the trial court found that the search was justified by Rubin's consent and denied Petitioner's motion to suppress evidence. (*Id.*)  Petitioner then

appealed to the California Court of Appeal, and the court affirmed the trial court's denial of the motion to suppress. (Lodgment 7 at 11-15.) The California Court of Appeal explained that the officers reasonably relied on Rubin's oral and written consent to search the motel room, and therefore the trial court properly denied Petitioner's motion to suppress the evidence found during that search. (*Id.* at 15.) Lastly, Petitioner appealed to the California Supreme Court, which denied his petition for review without comment. (Lodgment 9.)

Petitioner's full and fair opportunity in state court to litigate his illegal search and seizure claim precludes him from raising the issue again for federal habeas review. Accordingly, this Court **DENIES** Claim One of the Petition.

*B. Claim Two*

Petitioner claims there was not sufficient evidence of the "use of force or fear" element of robbery to support his conviction. (Pet. 7.) He argues that because there was no evidence he threatened or displayed a weapon, and the bank teller testified she was only "a little" afraid, the evidence was not sufficient to show any force or the degree of fear necessary for the crime of robbery. The Court of Appeal specifically rejected this contention, explaining:

> With regard to the crime of robbery, section 211 provides that "[r]obbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." . . . Where a victim has downplayed his or her fear, such may be inferred from the circumstances surrounding the offense that are reasonably calculated to prevent fear. *People v. Cuevas*, 89 Cal.App. 4th 689, 698 (2001). Moreover, even where a victim does not expressly testify that he or she was afraid in connection with the taking, if there is some evidence from which a trier of fact can infer the victim was "in fact afraid, and that such fear allowed the crime to be accomplished [citations]" (*People v. Mungia*, 234 Cal.App.3d 1703, 1709, n.2), the element of fear for robbery will be satisfied. *Id.*

(Lodgment 7 at 16-17.)

Applying this standard, the Court of Appeal found there was sufficient evidence that the bank teller was in fear:

> Here, the record before the jury, viewed in accordance with the above rules, showed the bank teller victim was in fear while being robbed by Pressly. Not only had the teller testified she was "a little afraid" when she read Pressly's robbery notes which he had pushed across the counter toward her, she immediately complied with his written demand, giving him all the money from her top drawer with the exception of the package of "20s" containing the dye pack according to his instructions. When Pressly then demanded she "give [him] those 20s" as she was closing that drawer, she immediately handed "those 20s" to him, fully complying with his subsequent verbal command. After the teller had given Pressly all the money from

> her two drawers, she waited until he had left the bank to push the silent alarm and alert her supervisor and coworkers that she had been robbed, consistent with the bank policy for her protection and others in the bank and Pressly's implied threat that she never saw him.

(*Id.* at 17-18.)

The California Court of Appeal concluded that the jury's finding that Petitioner used fear to commit the bank robbery was reasonable and supported by "substantial evidence":

> From the totality of this evidence, a reasonable jury could have found that the victim bank teller was in fear when she complied with Pressly's demand for money and waited to report the robbery until after he had left the bank. *See People v. Hill*, 17 Cal.4th 800, 850 (1998). Substantial evidence thus supports the jury's finding Pressly used fear to commit the bank robbery and his conviction will not be disturbed on appeal.

(*Id.* at 18.)

Petitioner "faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005). A federal court reviewing a state court conviction on a habeas petition does not determine whether the evidence established guilt beyond a reasonable doubt. *Payne v. Borg*, 982 F.2d 335, 338 (9tth Cir. 1992), *cert denied*, 510 U.S. 843 (1993). The federal court determines only whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1970)). Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt may the writ be granted. *Jackson*, 443 U.S. at 324.

Viewing the evidence in the light most favorable to the prosecution, and for the reasons described by the California Court of Appeal, there was sufficient evidence from which a rational trier of fact could have found beyond a reasonable doubt that the Petitioner was guilty of robbery as defined by California law. The state appellate court opinion rejecting Petitioner's claim is a reasonable construction of the evidence in this case and is not contrary to, or an objectively unreasonable application of, clearly established Supreme Court law. *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002). Accordingly, this Court **DENIES** Claim Two of Petitioner's Petition.

//
//

*Conclusion*

For the reasons above, this Court **ADOPTS** the R&R and, accordingly, **DENIES** Pressly's Petition for Writ of Habeas Corpus and **DISMISSES** the case with prejudice.

DATED: January 14, 2010

*[signature]*
**WILLIAM Q. HAYES**
United States District Judge